UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v- | No. 16-cr-642 (RJS) <u>OPINION & ORDER</u> |
| JEROME SHAW | |
| Defendant. | |

RICHARD J. SULLIVAN, District Judge:

Now before the Court is Defendant's motion to suppress statements made and property recovered by New Jersey police during a search conducted on October 21, 2012 in Upper Saddle River, New Jersey. Specifically, Defendant asserts that: (1) the stop and search of the Ford Explorer and duffle bag contained in its back seat (the "October 2012 Stop and Search") were illegal, and (2) the police failed to read him his *Miranda* rights, notwithstanding the fact that he was detained for over an hour. (Doc. Nos. 15, 23.) For the reasons set forth below, and as stated on the record at the oral argument on April 7, 2017, Defendant's motion is denied.

I. BACKGROUND

A. New Jersey Hearing

On October 21, 2012, Sergeant Emmett McDowell of the Upper Saddle River Police ("USRP") was on patrol of West Saddle River Road in a marked police vehicle. (Doc. No. 19-1 ("N.J. Op.") at 2.) At approximately 1:17 a.m., McDowell encountered a Ford Explorer blocking the south-bound lane, promptly approached the vehicle, and asked the driver – Defendant Jerome Shaw, Sr. ("Defendant" or "Shaw Sr.") – standard questions, such as what he was doing, where he was come from, and where he was going. (*Id.*) While standing outside the vehicle, McDowell observed that Shaw Sr. and his co-passenger, non-party Jerome Shaw, Jr. ("Shaw

Jr."), were wearing black coveralls – notwithstanding the fact that it was a fairly warm evening – and appeared anxious in answering his questions. (*Id.*) Glancing toward the rear seat of the vehicle, McDowell also observed what appeared to be a gun case commonly used to store assault rifles (the "Back-Seat Case"). (*Id.*) When McDowell asked about the Back-Seat Case – which was within reach of both Shaw Sr. and Shaw Jr. – Shaw Sr. stated that it contained construction tools but did not include a gun. (*Id.*) He also told McDowell that he could look inside it if he wished. (*Id.* at 2–3.) As the only police officer on the scene, McDowell did not feel safe accessing the Back-Seat Case alone and requested backup. (*Id.* at 3.)

A few minutes later, USRP Officer Edward Riedel arrived on the scene, was briefed by McDowell, and, upon looking into the vehicle, agreed that the Back-Seat Case looked like a case used to store assault rifles. (*Id.*) Riedel then asked Shaw Sr. to step out of the Ford Explorer. As Shaw Sr. left the vehicle, Riedel observed "a pair of black gloves, a black mask, black goggles, and a racquetball-sized rock on the floorboard." (*Id.* at 3–4.) Shaw Jr., who "spoke very softly . . . and avoided eye contact," thereafter informed Riedel that he could "go ahead and check the rifle case because there were only construction tools inside." (*Id.* at 3, 12; *see also* Exhibit S-1 at 8:30 (video footage in which Shaw Sr. tells officers, "you can open up the back").)[1] Riedel then opened the Back-Seat Case, in which he found "a large mallet, a pipe wrench, pry bars, cutting pliers, plastic zip ties, a screwdriver, crowbars, a rubber mallet, and kneepads." (N.J. Op. 3.) "Based on his training and experience," Riedel concluded that these materials were burglary tools. (*Id.*)

When interviewed by police prior to their arrest, both Shaw Sr. and Shaw Jr. claimed that

---

[1] Exhibit S-1 is the video footage of the March 2012 Stop and Search that was recorded on the USRP vehicle's dashboard. (*See* Doc. No. 22-1 at 19–21 (New Jersey Superior Court admitting Exhibit S-1 at the March 2014 suppression hearing).)

they had worked in construction that evening; however, their coveralls were completely clean and had no dirt on them. (*Id.* at 9.) Shaw Sr. and Shaw Jr. also gave inconsistent descriptions of their construction activities. While Shaw Jr. claimed that they had been doing construction in a residential area, Shaw Sr. asserted that they had been working at a strip mall. (*Id.* at 4.) Based on the totality of the circumstances, the police placed Shaw Sr. and Shaw Jr. under arrest and advised them of their *Miranda* rights. (*Id.* at 4.) McDowell also served Shaw Sr. with three motor vehicle summonses for obstructing traffic, careless driving, and having an unclear rear plate in violation of New Jersey traffic laws. (*Id.* at 4–5.) While searching Shaw Jr. incident to the arrest, police found a sheet of white paper that included a handwritten list of residential addresses in Saddle River and the nearby Borough of Mendham. (*Id.*) Following the arrest of Shaw Sr. and Shaw Jr., the police conducted a full search of the Ford Explorer pursuant to a search warrant that revealed still more evidence, including a sledgehammer, a ladder, two black ski masks, and $600 in cash. (*See* Doc. No. 26-1.)

On April 23, 2013, a Bergen County Grand Jury indicted Shaw Sr. and Shaw Jr., charging them with one count of conspiracy to commit burglary in violation of N.J.S.A. §§ 2C:5-2, 2C:18-2 (third degree); six counts of purposely attempting to enter residences with the purpose of committing an offense therein in violation of N.J.S.A. §§ 2C:5-1, 2C:18-2(a)(1) (third degree); and three counts of possessing of certain weapons with the purpose of using them unlawfully against the person and/or property of another in violation of N.J.S.A. § 2C:39-4d (third degree). (*Id.* at 5–6.)

Prior to trial, Defendants moved to suppress the evidence obtained at the October 2012 Stop and Search. Following a five-day evidentiary hearing in March 2014 that included testimony from McDowell and Riedel and video footage taken by a police dashboard camera, the

Honorable Liliana S. Deavila-Silebi of the Superior Court of New Jersey concluded that the police conducted a valid motor vehicle stop and protective sweep under *Terry v. Ohio*, 392 U.S. 1 (1968), since Defendant's Ford Explorer was impeding traffic and "McDowell had a reasonable and articulable suspicion that [Shaw Sr. and Shaw Jr.] could have a weapon (in the gun case) and may be engaged in criminal activity." (N.J. Op. 16–17.) In addition, Judge Deavila-Silebi determined that the seizures of physical evidence from Shaw Sr. and Shaw Jr., including the rifle case, black coveralls, black masks, black goggles, black gloves, and racquetball-sized rock, were not unconstitutional, since the police observed these items in "plain view" while standing outside the vehicle and reasonably concluded these items were burglary tools. (*Id.* at 11, 17.) She further concluded that the police held a "reasonable belief" that Shaw Sr. and Shaw Jr. threatened their safety since the Back-Seat Case was easily accessible to both men, and that both passengers consented to a search of the Back-Seat Case. Finally, Judge Deavila-Silebi also concluded that police had probable cause to arrest Shaw Sr. and Shaw Jr. since, among other things, police discovered burglar tools inside the Back-Seat Case, and both men acted suspiciously in interviews with police, gave inconsistent stories regarding their whereabouts that evening, and were wearing black coveralls, even though it was warm outside. (*Id.* at 14–15.) Therefore, she found that the search incident to arrest of Shaw Jr. that uncovered the list of residences in Upper Saddle River and Mendham was also justified. (*Id.*) Following the hearing, Shaw Sr. pleaded guilty and never appealed the denial of his suppression motion. (Doc. No. 22 at 4.)[2]

## B. Procedural History of This Case

On September 21, 2016, a grand jury in the United States District Court for the Southern

---

[2] The record is unclear as to the outcome of proceedings against Shaw Jr.

District of New York returned an indictment charging Defendant with: (1) conspiracy to transport stolen property in interstate commerce, in violation of 18 U.S.C. §§ 371, 2314; (2) interstate transportation of stolen property, in violation of 18 U.S.C. § 2314; (3) receipt and sale of stolen goods in interstate commerce, in violation of 18 U.S.C. § 2315; and (4) interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312. (Doc. No. 7.) On September 28, 2016, Defendant entered a plea of not guilty. Trial is scheduled to commence on May 1, 2017. (Doc. No. 16 at 12–14.)

On January 17, 2017, Defendant filed motions requesting: (1) production and inspection of all materials possessed by the government favorable to Defendant pursuant to *Brady v. Maryland*, *United States v. Giglio*, and their progeny; (2) early disclosure of materials prescribed by 18 U.S.C. § 3500; (3) notice 60 days in advance of the May 1, 2017 trial of evidence the government intends to introduce pursuant to Rule 404(b) of the Federal Rules of Evidence; and (4) disclosure of certain material pursuant to Rule 16 of the Federal Rules of the Criminal Procedure (collectively, the "Discovery Motions"). (Doc. No. 14.) Defendant also moved to suppress statements made and property recovered during the October 2012 Stop and Search. (*Id.*) On January 31, 2017, the government filed its response and argued, among other things, that the motion to suppress property obtained during the October 2012 Stop and Search should be denied in light of the New Jersey Superior Court's rejection of virtually identical arguments following the five-day suppression hearing. (Doc. No. 19.)

On February 13, 2017, the Court denied Defendant's various discovery motions, but reserved decision on the motion to suppress and ordered the parties to file supplemental briefs concerning the applicability of collateral estoppel. (Doc. No. 21.) After receiving supplementary submissions from the parties on February 16, 2017 and February 22, 2017 (Doc.

Nos. 22, 23), the Court, in an order dated February 23, 2017, directed Defendant to submit (1) a supplementary affidavit attesting to what statements, if any, he made to police officers on the night of the October 2012 Stop and Search that he is seeking to have suppressed, and (2) a letter specifying what evidence, if any, he intended to offer at a suppression hearing in this Court that had not already been introduced before the New Jersey Superior Court (Doc. No. 24 at 2).

In a supplemental letter, dated March 8, 2017, Defendant clarified that he did not intend to introduce any evidence beyond what was already considered in New Jersey Superior Court. (Doc. No. 25.) Defendant also submitted a supplemental affidavit in which he clarified that he only sought suppression of statements made to Riedel after Defendant had stepped out of the Ford Explorer. (Doc. Nos. 25-1, 22-2 at 35–36.) On March 13, 2017, the government stipulated that it did not intend to introduce these statements at trial. (Doc. No. 28.) On April 7, 2017, the Court heard argument on the motions and issued an oral ruling denying the motions. This opinion supplements the reasons for the Court's ruling.

II. DISCUSSION

A. *Miranda*

Defendant's motion to suppress under *Miranda* must be denied as moot in light of the government's representation that it will not introduce any of the disputed statements. *See United States v. Ahmed*, 94 F. Supp. 3d 394, 437 (E.D.N.Y. 2015) (denying "as moot" defendant's suppression motion under *Miranda* where "the [g]overnment has indicated that it will not introduce any of the disputed statements for any purposes"); *United States v. Burke*, No. 09-cr-135 (SJ), 2009 WL 4263635, at *4 (E.D.N.Y. Nov. 24, 2009) (same).

B. Physical Evidence

With respect to Defendant's motion to suppress property obtained during the October 2012 Stop and Search (Doc. No. 15 at 6–8), the government argues that Defendant is collaterally estopped from relitigating the legality of that search in light of the New Jersey Superior Court's denial of a nearly identical motion following the March 2014 suppression hearing (Doc. No. 22). For the reasons set forth below, the Court agrees, and in any event, the Court finds that it would reach the same conclusion based on the evidence before it, including the voluminous transcripts from the New Jersey Superior Court and the video footage of the October 2012 Stop and Search.

"Federal courts . . . are obliged to give the same effect to state-court criminal decisions 'as would be given to those decisions by the law of the state in which the judgment was rendered.'" *McCord v. City of New York*, No. 13-cv-2008 (AJN), 2014 WL 2567108, at *4 (S.D.N.Y. June 6, 2014) (quoting *Johnson v. Watkins,* 101 F.3d 792, 794 (2d Cir. 1996)); *accord Allen v. McCurry,* 449 U.S. 90, 103–04 (1980) (instructing courts to "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so"). Thus, "where a claimant has had a full and fair opportunity to litigate a Fourth Amendment issue in state court, the federal court should award the state court's findings preclusive effect in accordance with that state's preclusion doctrine." *Perlleshi v. Cty. of Westchester*, No. 98-cv-6927 (CM), 2000 WL 554294, at *4 (S.D.N.Y. Apr. 24, 2000); *accord Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 426–27 (S.D.N.Y. 2012); *Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003).

Under New Jersey law, which applies because Defendant was adjudged guilty in New Jersey state court, "[c]ollateral estoppel bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *W*

*& D Imports, Inc. v. Lia*, 563 F. App'x 19, 22 (2d Cir. 2014) (citation and internal quotation marks omitted) (applying New Jersey law). Collateral estoppel applies where:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Id.* (quoting *First Union Nat'l Bank v. Penn Salem Marina, Inc.,* 921 A.2d 417, 424 (N.J. 2007)).

It is true that collateral estoppel may not be applied against a criminal defendant with respect to issues of criminal liability. *See State v. Ingenito*, 432 A.2d 912 (N.J. 1981). Specifically, the New Jersey Supreme Court has concluded that "collateral estoppel, applied affirmatively against a defendant in a criminal prosecution, violates the right to trial by jury in that not only does it seriously hobble the jury in its quest for truth by removing significant facts from the deliberative process, but it constitutes a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations." *Id.* at 918–19. However, these constitutional concerns are not pertinent to suppression motions, which are adjudicated by judges and determined based on the preponderance of the evidence for the limited purpose of admitting or excluding evidence at trial. *See United States v. Matlock*, 415 U.S. 164, 173–74, 177–78 (1974).

Accordingly, at least one New Jersey court has precluded a criminal defendant from relitigating an unsuccessful suppression motion on collateral estoppel grounds. *State v. Davis*, No. A-4303-07T4, 2010 WL 4056849, at *6 (N.J. Super. Ct. App. Div. July 13, 2010) (applying doctrine of collateral estoppel where the court was "satisfied that defendant was afforded a full and fair opportunity to litigate" the *Miranda* issue). Applying federal law, the Second Circuit has also instructed that "a prior decision by another court on a motion to suppress is not

8

ordinarily reconsidered in the absence of substantial new evidence or extraordinary circumstances." *Laaman v. United States*, 973 F.2d 107, 113 (2d Cir. 1992); *accord United States v. McManaman*, 673 F.3d 841, 847 (8th Cir. 2012) (collaterally estopping defendant from relitigating Fourth Amendment issue where defendant offered "no new evidence or argument that would cast doubt on" the previous court's ruling); *United States v. Rosenberger*, 872 F.2d 240, 242 (8th Cir. 1989) (collaterally estopping defendant from relitigating suppression motion where defendant "was a party to the prior action, and, based upon the district court's thorough consideration of his claims, had a full and fair opportunity to litigate the issue of the validity of the search and the search warrant"). Earlier this month, Judge Rakoff likewise concluded that a criminal defendant was collaterally estopped from relitigating a Fourth Amendment issue that had previously been "vigorously litigated over a three-day hearing" before a different district judge. *United States v. Walker*, No. 16-cr-567 (JSR), 2017 WL 877325, at *2 (S.D.N.Y. Mar. 5, 2017); *see also United States v. Cutolo*, 861 F. Supp. 1142, 1150 (E.D.N.Y. 1994) (denying motion to suppress that defendant had already extensively litigated in a different federal criminal prosecution); *United States v. Yung*, 786 F. Supp. 1561, 1565 (D. Kan. 1992) (noting that "several federal courts have held that the doctrine of collateral estoppel can be used to prevent a criminal defendant from relitigating the lawfulness of searches and seizures"); *United States v. Levasseur*, 699 F. Supp. 965, 980 (D. Mass.) ("[C]ollateral estoppel can be applied to criminal defendants to prevent them from relitigating a previously unsuccessful attempt to suppress evidence . . . ."), *rev'd on other grounds*, 846 F.2d 786 (1st Cir. 1988); *People v. Page*, 614 N.E.2d 1160, 1167 (Ill. 1993) (noting that "application of collateral estoppel in the suppression context advances many of the same policy goals that underlie the doctrine generally, such as the conservation of judicial resources and the avoidance of repetitive litigation"); *but see United*

9

*States v. Harnage*, 976 F.2d 633, 635 (11th Cir. 1992) ("We are not convinced that allowing the government to bar a defendant from relitigating an unfavorable determination of facts in a prior proceeding would serve the original goal of collateral estoppel – judicial economy.").

Here, there is no dispute that the 2014 suppression hearing in New Jersey raised precisely the same issues regarding the constitutionality of the October 2012 Stop and Search. After having carefully reviewed the transcript of the five-day suppression hearing (*see* Doc. No. 22), it is also clear to the Court that Defendant had a full and fair opportunity to litigate the constitutionality of the October 2012 Stop and Search in that forum. *See Allen v. V & A Bros.*, 26 A.3d 430, 445 (N.J. 2011) (instructing courts applying New Jersey law to consider whether party previously had "an adequate opportunity to obtain a full and fair adjudication in the prior action"). Indeed, defense counsel vigorously cross examined the police officer witnesses and zealously challenged the state's evidence. Furthermore, notwithstanding Defendant's eventual guilty plea in that proceeding, New Jersey permits defendants to appeal an order denying suppression of physical evidence following a guilty plea. *See State v. Wise*, No. A-2892-11T3, 2014 WL 901996, at *2 (N.J. Super. Ct. App. Div. Mar. 10, 2014); *Allen*, 26 A.3d at 445 (whether party could have "obtained review of the prior judgment" highly relevant in issue preclusion analysis); *cf. Jenkins v. City of New York*, 478 F.3d 76, 92 (2d Cir. 2007) (noting that under New York law "facts determined in a pretrial suppression hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges," since that defendant "lack[s] an opportunity to obtain review of an issue decided against him"). Since Defendant had the opportunity to obtain review of the New Jersey Superior Court's March 2014 decision, and failed to seek such review, he is precluded from relitigating the constitutionality of the October 2012 Stop and Search in this forum.

In his response brief, Defendant relies heavily on the New York case of *People v. Pleavy*, (Doc. No. 23 at 1 (citing 52 N.Y.2d 58, 64 (1980))), in which the New York Court of Appeals recognized that collateral estoppel is "frequently" applied in the criminal context, but cautioned that the doctrine "cannot be applied in quite the same way as in civil cases" because, in criminal matters, "the pre-eminent concern is to reach a correct result" and "other considerations peculiar to criminal prosecutions may outweigh the need to avoid repetitive litigation," *Pleavy*, 52 N.Y.2d at 64–65. Thus, the Court of Appeals in *Pleavy* held that the lower court had erred in precluding defendant from relitigating a suppression motion because in the second case, defendant offered "important proof bearing directly on the correctness" of the outcome of the previous suppression hearing that had not been previously introduced. Specifically, Pleavy offered to testify in his own defense at the second suppression hearing, which he declined to do at his first suppression hearing. *Id.* at 64–66.

Defendant's reliance on *Pleavy* is misplaced for two reasons. First, as set forth earlier, the collateral estoppel law of New Jersey, rather than New York, applies, in this case. Furthermore, unlike the movant in *Pleavy*, Defendant here has not pointed to any "important proof bearing directly on the correctness" of the New Jersey Superior Court's decision that was not already introduced at the March 2014 suppression hearing. *Id.* at 65. In fact, as Defendant noted in a supplemental letter to the Court, he did not wish to offer *any* new evidence at a hearing. (Doc. No. 25.)

To be sure, certain decisions applying collateral estoppel to suppression hearings have required the government to prove that a defendant had sufficient motive at the prior hearing to contest the admissibility of the evidence. For instance, a federal judge in Massachusetts has suggested that "courts should hesitate to estop a defendant who lost a suppression hearing in a

previous matter involving charges [that were] relatively minor compared to the present charges." *Levasseur*, 699 F. Supp. at 981. Nevertheless, it can hardly be disputed that Defendant here had a motive to vigorously litigate the suppression motion before the New Jersey Superior Court, where Defendant was charged with ten third-degree crimes, including one count of conspiracy to commit burglary, six counts of attempting to enter a residence for the purpose of committing offenses therein, and three counts of unlawful weapons possession. (Doc. No. 19-1 at 5–6 (summarizing the charges against Defendant in New Jersey)); *Santini v. Fuentes*, 795 F.3d 410, 419 n.12 (3d Cir. 2015) (explaining that under New Jersey law, "[a] third degree crime may result in 3-5 years if convicted" (citation omitted)). Accordingly, the Court concludes that Defendant is collaterally estopped from relitigating the validity of the October 2012 Stop and Search.

But even if collateral estoppel did not apply, the Court would reach the same result based on its review of the voluminous record from the New Jersey hearing and the video evidence. First, it is clear from the first two minutes of the video that the Ford Explorer was, in fact, blocking an entire lane of traffic, thereby giving McDowell reasonable suspicion to believe that the driver was committing a motor vehicle offense. *See State v. Melvin*, No. A-3058-13T2, 2016 WL 3093061, at *5 (N.J. Super. Ct. App. Div. June 3, 2016) (traffic stop justified where defendant abruptly stopped in middle of two-way street and blocked traffic). Furthermore, the searches and seizures of the Back-Seat Case and the items on the floor of the Ford Explorer were clearly justified as a protective sweep and under the plain view exception. *United States v. Miller*, 430 F.3d 93, 98 (2d Cir. 2005) (noting that under *Michigan v. Long*, 463 U.S. 1032 (1983), officers may "search the passenger area of an automobile for weapons when the officers possess specific and articulable facts that warrant the reasonable belief that a suspect is

dangerous and may have immediate access to a weapon"); *United States v. Feliz*, 657 F. Supp. 2d 364, 373 (E.D.N.Y. 2009) (noting that "[a]n officer may seize evidence in plain view if: '(1) the officer's initial intrusion was permissible under the [F]ourth [A]mendment; (2) the discovery of the evidence is inadvertent; and (3) the incriminating nature of the evidence is immediately apparent.'" (quoting *United States v. Jenkins,* 876 F.2d 1085, 1088 (2d Cir. 1989)).

In addition, the searches were also justified in light of the fact that Defendant and his co-passenger, Shaw Jr., voluntarily provided consent to police officers. It is clear from the audio portion of the video that when McDowell first asked about the Back-Seat Case, Defendant told McDowell that "it's fine" for him to open the back door and inspect the Back-Seat Case. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (recognizing that a warrantless search may be conducted to which a defendant knowingly and voluntarily consents). Several minutes later, Defendant again told the officers that they "can open up the back." Accordingly, the police were clearly authorized to search the back and seize both the Back-Seat Case and the other items uncovered on the floor of the Ford Explorer near it.

As set forth earlier, Defendant represented to this Court that he did not wish to offer any evidence that was not already introduced before Judge Deavila-Silebi. (Doc. No. 25.) Defendant nonetheless argues that he is entitled to have a federal judge make credibility determinations with respect to the government's witnesses before making findings under federal constitutional law. (Doc. No. 23 at 2.) But it is well settled that "state courts, as judicial institutions of co-extant sovereigns, are equally capable of safeguarding federal constitutional rights." *Haw. Hous. Auth. v. Midkiff*, 463 U.S. 1323, 1325 (1983) (Rehnquist, J., in chambers); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("'[S]tate courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights,' and this Court has refused to sanction

any decision that would 'reflec[t] negatively upon [a] state court's ability to do so.'" (quoting *Trainor v. Hernandez*, 431 U.S. 434, 443 (1977))). Furthermore, Defendant cites no authority for the proposition that he has a special right to have a federal, as opposed to state, judge make credibility findings with respect to the government's witnesses. (*See* Doc. No. 23.)

Defendant also appears to assert that the Court's consideration of the police officers' testimony given at the New Jersey hearing violates his right under the Confrontation Clause of the Sixth Amendment of the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. But while there is at least one case in which the Second Circuit appears to have applied the Confrontation Clause to a pretrial suppression hearing, *United States v. Clark*, 475 F.2d 240, 246–47 (2d Cir. 1973) ("exclusion of the defendant" from a pretrial suppression hearing violated the Confrontation Clause, since Defendant was "entitled to assist his counsel in cross-examining [the government's] witnesses and in developing . . . matters further at the suppression hearing"), that case has not been cited in this circuit for that proposition for several decades and has been displaced by controlling Supreme Court precedent recognizing that the right to confrontation attaches at trial, but not to pretrial suppression proceedings. Indeed, only a year after the Second Circuit's decision in *Clark*, the Supreme Court cited with favor an older opinion, *McCrary v. Illinois*, in which an out-of-court, unidentified informant's statements against a defendant were admitted at a suppression hearing. *United States v. Matlock*, 415 U.S. 164, 174–75 (1974) (citing *McCrary v. Illinois*, 386 U.S. 300, 307–08 (1967)). The Supreme Court instructed that "[t]he [g]overnment would have been obligated to produce the informer and to put him on the stand had it wanted to use his testimony at defendant's trial," but concluded that the Sixth Amendment permitted "the use of [the

informer's] out-of-court statements at the suppression hearing, as well as the [g]overnment's refusal to identify him." *Id.* The *Matlock* Court also observed that "[t]here is . . . much to be said for the proposition that in proceedings where the judge himself is considering the admissibility of evidence, the exclusionary rules, aside from rules of privilege, should not be applicable; and the judge should receive the evidence and give it such weight as his judgment and experience counsel." *Id.* at 175.

Six years later, in *United States v. Raddatz*, the Supreme Court reaffirmed that "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial," since the "interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself" and "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." 447 U.S. 667, 679 (1980). Similarly, a plurality of the Supreme Court opined in *Pennsylvania v. Ritchie* that "the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." 480 U.S. 39, 52–53 (1987) (plurality opinion); *accord Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."); *see also Kentucky v. Stincer*, 482 U.S. 730, 744 (1987) (right to confrontation not violated by defendant's exclusion from competency hearing since defendant had "the opportunity for full and effective cross-examination of the two witnesses during trial"). And while the Supreme Court has since reinterpreted the Confrontation Clause in certain respects, it has continued to characterize the Confrontation Clause as a right that attaches at trial, as opposed to pretrial proceedings. *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (instructing that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear *at trial* unless he was

15

unavailable to testify and the defendant had had a prior opportunity for cross-examination." (emphasis added)).

In light of this authority from the Supreme Court, the Seventh Circuit and several district court judges within this Circuit have concluded that the Confrontation Clause does not attach to pretrial suppression hearings. *See, e.g.*, *Erbert v. Gaetz*, 610 F.3d 404, 414 (7th Cir. 2010) ("[B]ecause the court considered the statement at a suppression hearing, not [the defendant's] trial[,] the Confrontation Clause was not implicated."); *Wilkerson v. N.Y. State Bd. of Parole*, No. 13-cv-3817 (GHW), 2015 WL 678581, at *19 & n.5 (S.D.N.Y. Feb. 17, 2015) (same); *Smith v. Hulihan*, No. 11-cv-2948 (AJP), 2011 WL 4058764, at *23 (S.D.N.Y. Sept. 13, 2011), *report and recommendation adopted*, No. 11-cv-2948 (HB), 2012 WL 4928904 (S.D.N.Y. Oct. 17, 2012) ("The courts in this Circuit that have addressed this issue have found that the Confrontation Clause does not apply to pretrial hearings."). This Court agrees with the reasoning of those courts and concludes that the Sixth Amendment right to confrontation does not apply to pretrial suppression hearings. Therefore, the Court may consider the testimony of the police officers from the New Jersey hearing without requiring them to appear again for cross examination.

In any event, even if it were determined that Defendant's right to confrontation attached at this stage and precluded the Court from considering the police officers' out-of-court testimony, the Court would still deny the suppression motion based on the video footage of the October 2012 Stop and Search. *See United States v. Davis*, 531 F. App'x 65, 69 (2d Cir. 2013) (concluding videotape record was "not testimonial" and therefore was not implicated by the Confrontation Clause). As set forth earlier, it is clear from the first two minutes of the video – which Defendant does not dispute is authentic – that the Ford Explorer was blocking an entire

lane of traffic, thus justifying the stop by McDowell. Furthermore, it is clear from the video that Defendant consented to a search of the back of the Ford Explorer and Back-Seat Case, which provided sufficient justification for the seizure and Defendant's ultimate arrest, as well as the warrant that led to the seizure of other evidence.

III. CONCLUSION

In sum, the Court concludes that: (1) Defendant is collaterally estopped from relitigating the legality of the October 2012 Stop and Search, and in any event, (2) the Court would reach the same result based on the voluminous record collected at the New Jersey suppression hearing, including the video of the October 2012 Stop and Search. Thus, Defendant's suppression motion is denied, and the Clerk is respectfully directed to terminate the motion pending at docket number 23.

SO ORDERED.

Dated:      April 13, 2017
               New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/17