UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME SHAW, <br><br> Movant, <br> -v- <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | No. 22-cv-06170 (RJS) |
| UNITED STATES OF AMERICA <br><br> -v- <br><br> JEROME SHAW, <br><br> Defendant. | No. 16-cr-00642 (RJS) <br><br> MEMORANDUM AND ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

Defendant Jerome Shaw, proceeding pro se, moves under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence of 180 months' imprisonment imposed by the Court following his guilty plea to four counts related to his interstate transportation of stolen property. (Doc. No. 82 (the "Petition" or "Pet.").)[1] Shaw asserts that his sentence is invalid because the Court failed to sufficiently explain its reasons for imposing a sentence above the Sentencing Guidelines range that Shaw now contends he "agree[d] to" when he pleaded guilty, and that his counsel provided ineffective assistance at sentencing by failing to raise this putative "sentencing procedural error."

---

[1] Unless otherwise indicated, all docket citations are to the criminal docket, 16-cr-642 (RJS). In this Memorandum and Order, the Court will refer interchangeably to Shaw's pending filing under 28 U.S.C § 2255 as a "motion" and as a "habeas petition." *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 343 (1974) (noting that the "[28 U.S.C.] § 2255" motion to vacate, set aside, or correct a sentence is "a remedy identical . . . to federal habeas corpus").

(Pet. at 4–5.)  Shaw's motion, which was filed after the expiration of section 2255's one-year limitations period, is accompanied by a request for equitable tolling based on the restrictions put into place at his federal prison following the COVID-19 pandemic.  (*Id.* at 13.)  For the reasons set forth below, Shaw's petition is DENIED.

## I. BACKGROUND[2]

Shaw's guilty plea and sentence stem from his participation in a series of burglaries in Greenwich and Old Greenwich, Connecticut.  (PSR ¶ 11.)  Between December 2011 and his arrest in July 2016, Shaw committed fifteen burglaries and one home invasion robbery (including a fourteen-month spree of thirteen burglaries), during which he stole nearly five million dollars' worth of property.  (PSR ¶¶ 11–24.)  At a hearing on April 13, 2017, Shaw pleaded guilty to one count each of conspiracy to commit interstate transportation of stolen property, in violation of 18 U.S.C. § 371; interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2; receipt and sale of stolen goods, in violation of 18 U.S.C. §§ 2315 and 2; and interstate transportation of a stolen vehicle, in violation of 18 U.S.C. §§ 2312 and 2.  (Plea Tr. at 44:13–15; Doc. No. 69 ("Judgment").)  Although Shaw's guilty plea was not made pursuant to a plea agreement with the government, the government submitted a letter, as recommended in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), expressing its view of the appropriate Sentencing Guidelines range (the "*Pimentel* letter").  (Plea Tr. at 2:12–18; 36:13–15).  In its *Pimentel* letter, the government calculated an offense level of 27 and a criminal history category of IV, yielding a Guidelines range of 100 to 125 months' imprisonment.  (Plea Tr. at 37:14–21).  The Court expressly cautioned Shaw that neither the government nor the Court were bound by the

---

[2] These facts are largely drawn from Shaw's final revised presentence investigation report (Doc. No. 72 ("PSR")); the transcript of Shaw's April 3, 2017 guilty plea (Doc. No. 37 ("Plea Tr.")); the transcript of the April 25, 2018 conference held in advance of sentencing (Doc. No. 65 ("Apr. 25 Tr.")); and the sentencing transcript (Doc. No. 74 ("Sentencing Tr.")).

2

Guidelines range recommended in the *Pimentel* letter, and Shaw said he understood.  (Plea Tr. at 37:22–25.)

The Probation Department subsequently submitted its initial presentence investigation report, in which it concluded that Shaw's criminal history category was actually V – not IV – resulting in a Guidelines range of 120 to 150 months' imprisonment.  (Doc. No. 39 at 28.)  Shaw challenged several of the report's allegations related to his criminal history, and the Court held an evidentiary hearing in January 2018, pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), to determine the scope of Shaw's involvement in numerous burglaries that the PSR deemed relevant conduct under the Sentencing Guidelines.  (Doc. No. 57 ("*Fatico* Tr.").)

After considering the evidence adduced at the *Fatico* hearing and the parties' post-hearing submissions, the Court made detailed findings of fact related to Shaw's relevant conduct and his criminal history.  With respect to the former, the Court concluded that based on the evidence presented by the government, there was a "strong inference, well beyond a preponderance," that Shaw had indeed engaged in each of the disputed burglaries referenced in the PSR.  (Apr. 25 Tr. at 25:3–7).  The Court also noted that, although Shaw pleaded guilty, he "disputed most of the burglaries" and admitted only to "the most minimal and peripheral involvement."  (*Id*. at 31:3–17.)  It therefore determined that a three-level reduction for acceptance of responsibility was unwarranted, increasing Shaw's total offense level from 27 to 30.  (*Id*. at 32:15–33:10.)  The Court also agreed with the PSR's conclusion that Shaw was in criminal history category V.  Thus, based on an offense level of 30 and a criminal history category of V, the Court determined that the applicable Guidelines range was 151 to 188 months.  (*Id*. at 37:23–25.)  On May 18, 2018, the Court sentenced Shaw to 180 months' imprisonment and imposed a $100,000 forfeiture order.  (Sentencing Tr. at 31:18–24, 33:5.)

Shaw appealed, challenging the Court's factual findings following the *Fatico* hearing, its refusal to credit Shaw with acceptance of responsibility, the substantive reasonableness of his sentence, and the forfeiture amount. *See United States v. Shaw*, 782 F. App'x 74, 75 (2d Cir. 2019). The Second Circuit rejected Shaw's arguments and affirmed his sentence, holding that the Court's factual findings were supported by the evidence; that the Court did not err in refusing to credit Shaw with acceptance of responsibility since he had "falsely denied his participation in the burglaries and home invasion"; that the Court's within-Guidelines sentence was not substantively unreasonable; and that the forfeiture amount of $100,000 was not grossly disproportional to Shaw's offenses of conviction. *Id.* at 75–76. On March 23, 2020, the Supreme Court denied certiorari. *Shaw v. United States*, 140 S. Ct. 2544 (2020).

In a letter dated September 14, 2021, Shaw requested an extension to the one-year limitations period for filing a habeas petition under 28 U.S.C. § 2255, arguing that such an extension was warranted because pandemic-related restrictions at his prison limited his access to the "legal department." (Doc. No. 78.) The Court denied the request because Shaw had not yet filed a section 2255 petition at that time, and "a federal court lacks jurisdiction to consider the timeliness of a [section] 2255 petition until a petition is actually filed," *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001) (citation omitted). (Doc. No. 79.)

Shaw then submitted the instant request for an extension, dated October 12, 2021 – this time accompanied by a form motion for habeas relief, which the Court will treat as a "substantive

4

motion for relief under section 2255." *Green*, 260 F.3d at 82.[3] In his motion, Shaw raises two grounds for habeas relief, neither of which was raised on direct appeal. First, he argues that the Court "failed to give the specific reasons for [an] upward departure" from the "120–125 [G]uideline[s] range" that Shaw "first agree[d] to" when he pleaded guilty.[4] (Pet. at 4.) Second, he argues that he received ineffective assistance of counsel because his lawyer "failed to raise th[is] sentencing procedural error." (Pet. at 5.)

## II. LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). A district court may "review and dismiss habeas petitions prior to any responsive pleading by the government if it plainly appears from the face of the petition and any

---

[3] Shaw's letter states that he "will be represented by counsel for the completion of his [section] 2255 filing," which implies that he anticipated filing a further motion in support of relief under section 2255. (Pet. at 13.) But the Court expressly stated, in its previous order denying Shaw's first request for an extension, that any such request must be accompanied by a habeas petition. (Doc. No. 79.) And Shaw's second letter now includes a form habeas motion that "specif[ies] all the grounds for relief . . . and . . . set[s] forth in summary form the facts supporting each of the grounds thus specified." *Green*, 260 F.3d at 82. Accordingly, the Court construes Shaw's filing as a motion under section 2255. *See id.*

[4] Shaw's petition states that "the plea agreement was for 120–125 months" (Pet. at 4), but as noted above, Shaw pleaded guilty at a hearing without a plea agreement. (*See* Plea Tr. at 2:12–18.) The Court understands Shaw to be referencing the initial Guidelines calculation submitted by the government in its *Pimentel* letter at the time of the plea hearing, in which it calculated a range of 100–125 months based on a total offense level of 27 and a criminal history category of IV.

5

exhibits annexed to it that the petitioner is not entitled to relief." *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000) (internal quotation marks and alterations omitted).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). Additional limitations were put in place by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996) ("AEDPA").

One such limitation is that habeas petitions must be brought in a timely fashion. Section 2255 "imposes a one-year statute of limitations on motions to set aside sentences [allegedly] imposed . . . 'in violation of the Constitution or laws of the United States.'" *United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (citing 28 U.S.C. § 2255(a), (f)). "This one year runs from the last of a number of triggering events," *id.* (internal quotation marks omitted), including, as relevant here, "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1). "[A] prisoner's conviction becomes final under section 2255 . . . when the United States Supreme Court denies the prisoner's petition for a writ of certiorari." *Green v. United States*, 260 F.3d 78, 84 (2d Cir. 2001).

Another such limitation, the "procedural default rule," bars "claims that could have been brought on direct appeal" – but were not – "from being raised on collateral review absent cause and prejudice." *Yick Man Mui*, 614 F.3d at 54. That is, "[i]n order to raise a claim that could have been raised on direct appeal, a [section] 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error." *Id.* (internal quotation marks omitted). One form of cause that can overcome a procedural bar is constitutionally ineffective

assistance of counsel on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). In addition to constituting "cause" that would overcome a procedural default bar, an ineffective assistance of counsel claim "may appropriately be raised for the first time in a [section] 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (quoting *Massaro v. United States*, 538 U.S. 500, 504, 509 (2003)).

### III. DISCUSSION

The Court first addresses Shaw's request for equitable tolling of the one-year limitations period in which to file his section 2255 motion. Shaw's judgment of conviction became final on March 23, 2020, when the Supreme Court denied his petition for certiorari. His motion for habeas relief, meanwhile, was dated October 12, 2021 (Doc. No. 80) – more than a year after his conviction, rendering it facially untimely.[5] The Supreme Court, however, "has confirmed that AEDPA's statute of limitations is not jurisdictional and 'does not set forth an inflexible rule requiring dismissal whenever its clock has run.'" *Rivas v. Fischer*, 687 F.3d 514, 537 (2d Cir. 2012) (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010)). Rather, the limitations period is "subject to equitable tolling in appropriate cases." *Id*. "[A] district court may grant an extension of time to file a motion pursuant to section 2255 only if (1) the moving party requests the extension upon or after filing an actual section 2255 motion, and (2) rare and exceptional circumstances warrant equitably tolling the limitations period." *Green*, 260 F.3d at 82–83 (internal quotation marks omitted). As discussed above, Shaw's request for an extension is now accompanied by a

---

[5] "When a prisoner is proceeding pro se, . . . federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk." *Adeline v. Stinson*, 206 F.3d 249, 251 n.1 (2d Cir. 2000). Here, Shaw's first letter to the Court requesting an extension of time for filing his section 2255 motion was dated September 14, 2021. (*See* Doc. No. 78.) The instant habeas petition was signed on October 12, 2021, and Shaw certified that he gave it to prison officials on October 13. (Pet. at 12.) Regardless of which of these dates the Court treats as the filing date, the motion plainly falls outside the one-year limitations period.

7

motion under section 2255, satisfying the first element, so the Court may consider whether "rare and exceptional" circumstances warrant equitable tolling here. *See id*.

"To warrant equitable tolling, the circumstances of a case must be extraordinary." *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019) (internal quotation marks omitted). "When determining what constitutes 'extraordinary' circumstances, [the Second Circuit] ha[s] observed that the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Id*. (internal quotation marks omitted).

"Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling." *Id*. at 685. Diligence "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). That is, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Id*.

Here, Shaw argues that the pandemic-related restrictions at his prison left him without "full access to the legal department," and without the resources needed "to prepare the proper documents" to file his section 2255 petition. (Pet. at 13.) But other than this conclusory assertion, Shaw provides no further explanation as to how restricted access to the legal department prevented him from timely filing his motion. Indeed, even assuming that Shaw's correctional institution had

ongoing "intense modifications" prior to his filing of the instant motion (*see* Pet. at 14 ("Notice to Inmate Population," dated August 26, 2021)), it is apparent that Shaw was still able to submit a form motion to the Court articulating his arguments for relief.  Shaw's arguments in support of habeas relief, moreover, are based primarily on the contention that the sentence imposed by the Court was above the Guidelines range that had been discussed during Shaw's April 2017 plea hearing.  Such facts were known to Shaw long before the start of the COVID-19 pandemic, and it is not apparent why he needed "full access to the legal department" to make this argument to the Court.

As other courts have explained in similar circumstances, "the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis," and a petitioner seeking such relief must demonstrate that he was "pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion."  *United States v. Henry*, No. 17-cr-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020), *certificate of appealability denied*, No. 21-1285, 2021 WL 3669374 (3d Cir. June 3, 2021); *see also, e.g.*, *Donald v. Pruitt*, 853 F. App'x 230, 234 (10th Cir. 2021) (holding that a petitioner was "not entitled to equitable tolling based on his allegedly limited access to the law library in the wake of COVID-19" because he "ha[d]n't shown that he was pursuing his rights diligently throughout the one-year window"); *Hines v. United States*, No. 17-cr-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) (concluding that "pandemic-related restrictions on access to the law library" did not excuse the failure to timely file a petition under section 2255, given that the petitioner was aware of the facts forming the basis of his petition and had pointed to "no reason why he could not have filed a petition – even a bare-bones one – and then asked for additional time to supplement it").

Accordingly, even if the COVID-19 restrictions at Shaw's facility constituted "extraordinary circumstances," Shaw has nevertheless failed "to demonstrate a causal relationship between the extraordinary circumstances . . . and the lateness of his filing." *Valverde*, 224 F.3d at 134. He was well aware of the basis for his petition both before and after the pandemic-related restrictions took effect, and he does not contend that he made any attempt to timely file a petition during the one-year limitations period. *See id.* (explaining that a petitioner must show that he "exercised reasonable diligence in attempting to file after the extraordinary circumstances began"); *see also Watson v. Smith*, 268 F. App'x 86, 87 (2d Cir. 2008) (holding that a petitioner's lack of access to certain legal materials did not warrant equitable tolling where the petitioner failed to show that the unavailability of those materials caused his late filing). The pandemic restrictions therefore cannot excuse his failure to timely file a petition – "even a bare-bones one," *Hines*, 2021 WL 2456679, at *2, like the form motion that he ultimately submitted. And although he also raises a claim of ineffective assistance of counsel (Pet. at 5), "[Shaw] does not allege any ineffectiveness of trial counsel that created obstacles to the timely filing of a habeas petition." *Celaj v. Artuz*, 49 F. App'x 331, 334 (2d Cir. 2002). Shaw's petition is therefore time-barred.

In any event, even if the Court were to find equitable tolling warranted here, Shaw's motion would still fail on the merits. Shaw asserts that the Court impermissibly exceeded the Guidelines range "agree[d] to" during his plea hearing, and that his counsel was ineffective for failing to raise this challenge. (Pet. at 4–5.) But when Shaw appeared before this Court to plead guilty, the Court advised him that he was facing a maximum term of imprisonment of thirty-five years. (Plea Tr. at 26:14–17.) The Court also *explicitly* cautioned Shaw that his ultimate sentence would be up to the Court "and nobody else," and that "if anybody else has told you what your sentence is going to be, well, they don't know what they're talking about because I'm the only one who can impose the

10

sentence and I don't know what the sentence will be." (*Id*. at 29:1–11.) Finally, although the Court explained that the government's *Pimentel* letter provided an initial Guidelines calculation of 100 to 125 months, both the Court and the government's letter – which Shaw acknowledged that he reviewed with counsel prior to sentencing – made clear that the Court was not bound by that sentencing range. (*Id*. at 36:13–37:25). Accordingly, contrary to his assertions, Shaw at no point "agree[d] to" a maximum sentence of 125 months when he pleaded guilty. (Pet. at 4.)

Instead, following a *Fatico* hearing and multiple sentencing submissions, the Court concluded that Shaw's total offense level was 30 and his criminal history category was V, resulting in a Guidelines range of 151 to 188 months – a finding that the Second Circuit affirmed on appeal. (Apr. 25 Tr. at 37:23–25); *Shaw*, 782 F. App'x at 75. The Court's sentence of 180 months' imprisonment fell within this range, so Shaw is also incorrect to assert that the Court "failed to give the specific reasons for upward departure" from the Guidelines. (Pet. at 6.) Shaw therefore cannot show that the Court committed *any* error at sentencing – much less an error that entitles him to relief on this section 2255 motion.[6]  *See United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (noting that relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice") (internal quotation marks omitted).

And because Shaw's Guidelines-based claim would fail on the merits, his ineffective assistance of counsel claim must fail, too. To prove ineffective assistance of counsel, Shaw must show that "(1) [his] counsel's performance was objectively deficient, and (2) [he] was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing

---

[6] Alternatively, to the extent Shaw is really challenging the Court's Guidelines calculation based on its factual findings following the *Fatico* hearing and its determination that Shaw was not entitled to a reduction for acceptance of responsibility, these arguments were already rejected by the Second Circuit, and Shaw may not "re-litigat[e] issues already decided on direct appeal." *Yick Man Mui*, 614 F.3d at 53.

11

*Strickland v. Washington*, 466 U.S. 668, 687–88, 692–93 (1984)). Again, Shaw argues that his counsel at sentencing was ineffective for failing to raise the Court's alleged "sentencing procedural error" discussed above. (Pet. at 5.) But because Shaw's underlying substantive argument fails on the merits, his counsel's performance did not fall below an objective standard of reasonableness, since "the failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).[7]

### IV.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Shaw's motion under 28 U.S.C. § 2255 is DENIED. In addition, because Shaw has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability. *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, Shaw may not proceed in forma pauperis. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of

---

[7] Having determined that Shaw's ineffective assistance of counsel claim would fail on the merits, it is apparent that his first Guidelines-based claim – beyond being untimely and substantively meritless – would *also* be barred by virtue of Shaw's unexcused procedural default. That is, because Shaw concedes in his Petition that he did not raise the Guidelines-based claim on direct appeal (Pet. at 4–5), he must "show cause for failing to raise the claim[s] at the appropriate time and prejudice from the alleged error." *Yick Man Mui*, 614 F.3d at 54 (internal quotation marks omitted). And while a *valid* claim of constitutionally ineffective assistance could theoretically constitute "cause" to excuse Shaw's procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), Shaw's *invalid* claim of ineffective assistance cannot. Nor can Shaw demonstrate any other valid "cause" to excuse his procedural default claim: as noted, the facts forming the basis of Shaw's Guidelines-based claim were known to him at the time of sentencing, so there is no apparent reason why he could not have raised these arguments on direct appeal along with the other challenges he raised to the Court's Guidelines calculation and the reasonableness of his sentence.

Court is respectfully directed to terminate the motions pending at 16-cr-642, document numbers 80 and 82; to close case 22-cv-6170; and to mail a copy of this Order to Shaw.

SO ORDERED.

Dated:	July 25, 2022
	New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

13